O. J. BLENDE, Appellant,

v.

MARICOPA COUNTY MEDICAL SOCIETY, an Arizona corporation, and John A. Eisenbeiss, Jr., Paul L. Singer and Clyde J. Barker, Jr., as members of the Board of Censors of Maricopa County Medical Society, Appellees.

No. 7235.

Supreme Court of Arizona.

En Banc.

July 8, 1964.

Flynn & Allen, Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, for appellant.

Snell & Wilmer, by Roger W. Perry, Phoenix, for appellees.

LOCKWOOD, Vice Chief Justice.

The appellant, a duly licensed physician, petitioned the lower court for a writ of mandamus directed against the appellees, the Maricopa County Medical Society, hereafter referred to as the Society, and the individuals comprising the Society's Board of Censors. The appellant asked the lower court to review the Society's action denying him membership. The lower court granted the appellees' motion for judgment on the pleadings with prejudice and this appeal resulted.

On November 12, 1956, the appellant applied for probationary or term membership in the Society, and on April 1, 1957, he was so admitted. Since term membership automatically expires after two years, the appellant applied for permanent membership in the Society on March 6, 1959. The Board of Censors of the Society investigated the appellant and held two meetings to consider certain matters relating to appellant's qualifications for membership. After the investigation was concluded, the Board of Censors reported to the Society. At a meeting held on June 6, 1960, the Society voted upon the application of the appellant for permanent membership and denied it.

Appellant then brought this mandamus action against the Society and the Board of Censors. He alleged that the appellees had acted capriciously and arbitrarily when denying him membership. He also alleged that such denial of membership would seriously curtail his practice of medicine because the maintenance of staff privileges in the hospitals of Maricopa County depends upon membership in the Society. Consequently, the appellant claimed that the Society could not deny him membership arbitrarily, but only upon a showing of just cause. Appellees filed an answer denying these allegations. Both the petition and the answer were verified. Attached to the pleadings as exhibits were copies of the articles of incorporation and bylaws of the Society.

Appellees moved for judgment on the pleadings for failure to state a claim upon which relief could be granted. See Rule 12(c) of the Arizona Rules of Civil Procedure, 16 A.R.S. The trial judge granted appellees' motion for judgment on the pleadings with prejudice and refused to permit amendment of the pleadings on the ground that a voluntary association may "arbitrarily" determine its membership. This appeal resulted.

The appellant relies heavily on Falcone v. Middlesex County Medical Society, 34 N.J. 582, 170 A.2d 791, 89 A.L.R.2d 952 (1961). In the Falcone case, the plaintiff doctor held a medical degree from a school ap-

proved by the American Medical Association and a license to practice medicine and surgery in New Jersey. But the defendant medical society denied him full membership on the ground that he had received part of his medical education at a non-approved osteopathic college.[1] As a result, the plaintiff was denied access to satisfactory medical facilities since local hospitals would not extend privileges to doctors ineligible for membership in the society. The court affirmed a decree compelling his admission to full membership.

The Falcone decision relied on cases requiring labor unions with closed-shop agreements to admit a nonmember or to refrain from enforcing the agreement against him. The theory of these union cases was that the unions had monopolistic power and, therefore, had attained "a quasi-public position similar to that of a public service" with a common law duty to serve all comers on reasonable terms. See, e. g. James v. Marinship Corp., 25 Cal.2d 721, 155 P.2d 329, 335 (1944). The court reasoned that the medical society had a similar fiduciary duty and stated 170 A.2d at 799:

"Through its interrelationships, the County Medical Society possesses, in fact, a virtual monopoly over the use of local hospital facilities. As a result it has power, by excluding Dr. Falcone from membership, to preclude him from successfully continuing in his practice of obstetrics and surgery and to restrict patients who wish to engage him as an obstetrician or surgeon in their freedom of choice of physicians. Public policy strongly dictates that this power should not be unbridled but should be viewed judicially as a fiduciary power to be exercised in reasonable and lawful manner for the advancement of the interests of the medical profession and the public generally * * *."

Consequently, the court in Falcone imposed a significant limitation on the traditional view that medical societies and other voluntary associations have unlimited discretion to grant or refuse admission to membership. See, e. g. State ex rel. Hartigan v. Monongalia County Medical Society, 97 W. Va. 273, 124 S.E. 826 (1924) and Trautwein v. Harbourt, 40 N.J.Super. 247, 123 A.2d

---

1. The plaintiff in the Falcone case had actually been granted probationary membership, but the medical society had refused to admit him to permanent membership at the end of the probationary period. The lower court stated that exclusion and expulsion cases should be treated under the same standard. See Falcone v. Middlesex County Medical Society, 62 N.J.Super. 184, 162 A.2d 324,

330, (1960). The appellate court did not discuss the issue in affirming. We agree that no real distinction exists between expulsion and exclusion where nonmembership seriously impairs a person's ability to pursue his occupation. See Chafee, "The Internal Affairs of Associations Not for Profit," 43 Harv.L.Rev. 993, 1022 (1930).

30, 59 A.L.R.2d 1274 (1956), certification denied, 22 N.J. 220, 125 A.2d 233 (1956).

■ We agree with the reasoning in the Falcone decision. The interests in freedom of association and in autonomy for private associations make it desirable to allow private groups to determine their own membership. But when a medical society controls a doctor's access to hospital facilities, then the society's exercise of a quasi-governmental power is the legitimate object of judicial concern. See "Judicial Control of Actions of Private Associations," 76 Harv.L.Rev. 983 (1963), an excellent note which gives some order to the body of judicial decisions in this area. Recent decisions have upheld social and fraternal groups' absolute discretion to exclude, but have distinguished situations in which "the organization has a business monopoly," Sebastian v. Quarter Century Club of United Shoe Mach. Corp., 327 Mass. 178, 97 N.E.2d 412, 413 (1951), or in which membership is an "economic necessity." Trautwein v. Harbourt, supra, 123 A.2d at 39.

In his complaint, the appellant alleged on information and belief "that maintenance of staff privileges at hospitals in the County of Maricopa, State of Arizona is predicated upon membership in the respondent society." The Society denied this by a verified answer. The appellant's complaint set forth a cause of action for which relief could be granted—if denial of membership in the Society will deprive appellant of hospital staff privileges, then the Society may not arbitrarily deny him membership. Consequently, the trial judge should not have given judgment on the pleadings on the ground that the Society may "arbitrarily" deny membership.

■■ We have examined the Society's articles and bylaws and find that they establish two things: first, the articles and bylaws indicate no formal relation exists between membership in the Society and maintenance of staff privileges in local hospitals; second, the Society complied with the procedural requirements of its articles and bylaws when considering the appellant's application for membership and, therefore, appellant's allegations of procedural irregularity [2] and bad faith [3] are without merit. But there still may exist the question of

2. The appellant alleged procedural irregularity because the "Board of Censors did not submit their findings and recommendations as to the desirability or undesirability of the appellant." The Society's articles authorize the Board to "make such investigations and reports as they deem necessary and proper for the welfare of the Society." But the appellant's complaint itself demonstrates that there

is no merit in appellant's contention: "that such Board of Censors then reported its findings to the members of the Society for their consideration with respect to petitioner's [the appellant] application for permanent membership. * * * "

3. The appellant alleged that the Board of Censors acted in bad faith when it did not present to the Society all the evi-

a definite, though informal relation between membership in the Society and maintenance of staff privileges in local hospitals. If appellant can show the existence of such a relation, then his membership application may not be denied arbitrarily, but only on a showing of just cause established by the Society under proceedings embodying the elements of due process.

When determining whether "just cause" has been shown, the court must consider whether the grounds for exclusion were (1) supported by substantial evidence and (2) reasonably related to legitimate professional purposes of the Society. The judicial process involved in determining such a standard of reasonableness is essentially one of balancing individual, group and public interests: the right of the individual to practice his profession without undue restriction; the right of the public to have unrestricted choice of physicians; and the justification for the Society's action. When examining the justification for the exclusion, the court should consider several factors: the social value of the goal of the Society's action; the appropriateness of the Society as a means for achieving the goal; and the reasonableness of this

particular action of the Society in relation to the goal.[4]

In making such an inquiry, the court must guard against unduly interfering with the Society's autonomy by substituting judicial judgment for that of the Society in an area where the competence of the court does not equal that of the Society. For example, the court in Falcone concluded that the exclusion of a licensed physician with a degree from an AMA-approved school bore "no relation to the advancement of medical science or the elevation of professional standards." 170 A.2d at 800. But by rejecting the medical society's requirement of four years of training at an AMA-approved school, the court may have made an appraisal of medical training beyond its competence. Such de novo review seems unwise.[5]

Therefore, the scope of judicial review of the Society's action should be narrow. If the Society has refused membership on the basis of factual findings supported by substantial evidence and reached through the application of a reasonable standard—one which comports with the legitimate goals of the Society and the

dence upon which the report was based. The articles authorize the Board to "make such * * * reports as they deem necessary and proper for the welfare of the Society." The bylaws require only that the Board report its "findings, together with its recommenda-

tions as to the desirability *or* undesirability of the applicant." (Emphasis added.)

4. See Note, 76 Harv.L.Rev. 983, 1045–1055 (1963).
5. See, Note, 75 Harv.L.Rev. 1186, 1194–1195 (1962).

rights of the individual and the public—then judicial inquiry should end. Broad judicial review would unduly interfere with the autonomy of the Society and its competence to determine its membership affairs.

Judgment reversed and the case remanded for proceedings consistent with this opinion.

UDALL, C. J., and BERNSTEIN and JENNINGS, JJ., concurring.

STRUCKMEYER, J., concurs in the result.