565 P.2d 188

PIMA COUNTY MEDICAL
SOCIETY, Appellant,

v.

Barbara FELLAND, M.D., Appellee.

No. 2 CA–CIV 2267.

Court of Appeals of Arizona,
Division 2.

March 1, 1977.

Rehearing Denied March 30, 1977.

Review Denied April 26, 1977.

Lesher, Kimble, Rucker & Lindamood, P. C. by James C. Carruth and Robert O. Lesher, Tucson, for appellant.

Leslie J. Gilbertson, Tucson, for appellee.

HOWARD, Chief Judge.

The main question presented on this appeal is whether judicial intervention in the membership selection process of the Pima County Medical Society is justified.

Appellee has been a practicing physician in Pima County since 1965. She has been in private practice since 1970, specializing in "bariatrics" which deals with the treatment of obesity and weight control problems. Bariatrics is not, however, a medical specialty recognized by the American Medical Association.

In March, 1975, appellee applied for membership in the Pima County Medical Society (hereinafter referred to as the Society). No action was taken on her application and no reason was given for the delay. Finally, on February 3, 1976, appellee filed a special action complaint requesting the superior court to compel the Society to act on her membership application.

Four witnesses were called to testify in the proceedings below. Dr. David Ben-Asher, president of the Society, Dr. Jay Silverman, a member of the Society's board of credentials, and Mr. Walter Summers, executive director of the Society, testified that no action was taken on appellee's application because a complaint regarding her practice was pending before the state board of medical examiners.

Appellee testified as to the reasons she sought membership in the Society. She explained that in December 1974 or January 1975, Governor Raul Castro indicated that he would appoint her to the state board of medical examiners and suggested that she join the Society. Subsequently, she was not appointed. She further testified that she was an affiliate member of the American Society of Bariatric Physicians (ASBP), a professional group of her specialty. However, in order to achieve highest recognition in her specialty as a "diplomate" of the American Board of Bariatric Medicine (ABBM), she first had to be a regular member of ASBP. In order to be a regular member, she was required to belong to the national, state and/or local medical association. Although there was evidence to the contrary, appellee testified that membership in the Society was a prerequisite to membership in the Arizona Medical Associ-

ation and the American Medical Association. Thus, according to appellee's testimony, her failure to attain membership in the Society would effectively prevent her from taking her "boards" and qualifying as a "diplomate" in bariatrics.

Appellee also testified that as a specialist she relied extensively on referrals from other physicians and that she believed membership in the Society and status as a diplomate of the ABBM were important in obtaining referrals. The evidence did not indicate, however, that lack of membership in the Society had prevented her from obtaining staff privileges in a local hospital or from obtaining malpractice insurance.

At the conclusion of the testimony the trial court found that:

"When a medical society contols a doctor's ability to join his peer and professional groups, the society is exercising a quasi-governmental power and as such is a legitimate object of judicial concern."

The court further found: (1) that membership in the local medical society is a prerequisite for membership in the state and national associations; (2) that membership in the Pima County Medical Society is a prerequisite for membership in the professional organizations to which appellee aspires; (3) that membership in the Pima County Medical Society is a prerequisite for serving on certain state medical groups such as the State Board of Medical Examiners; (4) that appellee has met all the admission requirements for the local society except payment of dues, which by custom is not required until the applicant is elected, and (5) that appellee's application has been withheld for an unduly long period without just cause and without due process. Judgment was entered in favor of appellee and the Society was ordered to vote by July 21, 1976. From this order, appellant has appealed.

Although courts have been reluctant to interfere with the internal affairs of private associations, in a case presenting sufficiently compelling factual and policy considerations judicial review has been available. See *Falcone v. Middlesex County Medical Society*, 34 N.J. 582, 170 A.2d 791 (1961) and cases cited therein. In Arizona, in *Blende v. Maricopa County Medical Society*, 96 Ariz. 240, 393 P.2d 926 (1964) the court found that when a medical society controls a doctor's access to hospital facilities, it exercises a quasi-governmental power which is the legitimate object of judicial concern. The court thus held that the society could not arbitrarily deny membership. And recently, in *Peterson v. Tucson General Hospital*, 114 Ariz. 66, 559 P.2d 186 (filed November 16, 1976), this court found that the policy considerations compelling judicial review in *Blende* were equally applicable to a private hospital which constituted a "virtual monopoly" because it was the only hospital in the city in which an osteopathic physician could obtain staff privileges.

The trial court below relied on *Blende* as authority for judicial review on the ground that although the medical society in this case did not control access to hospital facilities, it did control access to other professional groups of appellee's specialty. Appellant argues, however, that *Blende* represents a strict economic necessity test and should not be expanded. We agree.

The only issue which might suggest the exercise of a quasi-governmental function justifying judicial intervention was the fact that at one time appellee was denied malpractice insurance because she was not a member of the Society, such insurance being a prerequisite to practice at Tucson Medical Center, one of Tucson's private hospitals. However, at the time of trial appellee had secured malpractice insurance.

Reversed with directions to dismiss the complaint.

HATHAWAY and RICHMOND, JJ., concur.